# United States Court of Appeals
# for the Federal Circuit

———————————

**MEDIA RIGHTS TECHNOLOGIES, INC.,**
*Plaintiff-Appellant*

**v.**

**CAPITAL ONE FINANCIAL CORPORATION,
CAPITAL ONE BANK (USA), N.A.,
CAPITAL ONE, N.A.,**
*Defendants-Appellees*

———————————

2014-1218

———————————

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:13-cv-00476-AJT-TRJ, Judge Anthony J. Trenga.

———————————

Decided: September 4, 2015

———————————

BYRON LEROY PICKARD, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for plaintiff-appellant. Also represented by ROBERT GREENE STERNE, JONATHAN M. STRANG, JON WRIGHT; DANIEL LUKE GEYSER, McKool Smith, P.C., Dallas, TX; COURTLAND L. REICHMAN, Redwood City, CA.

ROBERT A. ANGLE, Troutman Sanders LLP, Richmond, VA, argued for defendants-appellees. Also represented by DABNEY JEFFERSON CARR, IV, GEORGE A. SOMERVILLE,

2                                    MEDIA RIGHTS TECHNOLOGIES v.
                                     CAPITAL ONE FINANCIAL CORP.

NICHOLAS RICHARD KLAIBER; DOUGLAS SALYERS, Atlanta, GA.

———————————

Before O'MALLEY, PLAGER, and TARANTO, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

Media Rights Technologies, Inc. ("Media Rights") appeals the district court's decision to grant judgment on the pleadings that all claims of U.S. Patent No. 7,316,033 (the "'033 Patent") are invalid for indefiniteness. Because the trial court correctly determined that the term "compliance mechanism," which is a limitation in every single claim, is a means-plus-function term that lacks sufficient structure, we affirm.

BACKGROUND

On April 19, 2013, Media Rights filed suit against Capital One Financial Corporation; Capital One Bank (USA), N.A.; and Capital One, N.A. (collectively, "Capital One") in the United States District Court for the Eastern District of Virginia, alleging infringement of the '033 Patent. The '033 Patent is entitled "Method of Controlling Recording of Media" and is generally directed to methods, systems, and computer readable media related to the prevention of unauthorized recording of electronic media. '033 Patent, Abstract. Specifically, the '033 Patent prevents unauthorized recording via a compliance mechanism, which diverts incoming media content protected by law or agreement from being output from a system in order to stop the illegal copying or sharing of that content.

Claim 1 is illustrative of the invention, and it recites:

A method of preventing unauthorized recording of electronic media comprising:

> Activating a *compliance mechanism* in response to receiving media content by a client system, said *compliance mechanism* coupled to said client system, said client system having a media content presentation application operable thereon and coupled to said *compliance mechanism*;

> Controlling a data output pathway of said client system with said *compliance mechanism* by diverting a commonly used data pathway of said media player application to a controlled data pathway monitored by said *compliance mechanism*; and

> Directing said media content to a *custom media device* coupled to said *compliance mechanism* via said data output path, for selectively restricting output of said media content.

'033 Patent col. 36:19–34 (emphases added).

After the filing of the complaint, the case proceeded normally and the district court scheduled a *Markman* hearing for fall 2013. On the same day it filed its opening claim construction brief, Capital One also filed a motion for judgment on the pleadings that the '033 Patent was invalid under 35 U.S.C. §§ 101 and 112(b). Because the motion largely turned on claim construction, the district court heard argument on the motion for judgment on the pleadings the same day as the *Markman* hearing. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, No. 1:13-cv-00476 (Oct. 1, 2013), ECF No. 51.

Upon consideration, the district court issued a decision, concluding that (1) the terms "compliance mechanism" and "custom media device" are indefinite and, (2) because every claim of the '033 Patent contained both terms, all of the claims of the '033 Patent, claims 1–27, are invalid. *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, No. 1:13-cv-00476, 2013 U.S. Dist. LEXIS 176475,

at *2 (E.D. Va. Dec. 9, 2013). Specifically, with respect to the "compliance mechanism" term, the district court first noted that the parties disputed whether this term was a means-plus-function term. *Id.* at *8. Because the term did not use the word "means," Media Rights argued that it was not a means-plus-function term, while Capital One disagreed. The district court found that the claim language itself stated that the "compliance mechanism" was activated in response to the client system receiving media content, that it controlled a data output path, and that it monitored a controlled data pathway. *Id.* at *10. Because this language only describes how the components of invention are combined and the functions performed by the "compliance mechanism," without suggesting anything about the structure of the mechanism itself, the district court determined that the claim language did not recite sufficient structure for the "compliance mechanism" term. *Id.* Thus, the district court concluded that the "'compliance mechanism' must be a means-plus-function term." *Id.* at *10–11.

Having concluded that the term is a means-plus-function term, the district court next considered what functions it performs, and then determined what structure identified in the specification performs these functions. *Id.* at *11. The district court concluded that "compliance mechanism" performs four functions:

(1) "controlling a data output of [the] client system . . . by diverting a commonly used data pathway of [the] media player application to a controlled data pathway" (Claim 1);

(2) monitoring the controlled data pathway (Claims 1, 10 and 19);

(3) "managing an output path of [the] client system . . . by diverting a commonly used data pathway of [the] media player application to a controlled data pathway" (Claim 10); and

> (4) "stop[ping] or disrupt[ing] the playing of [the] media content at [the] controlled data pathway when said playing of said media file content is outside of [the] usage restriction applicable to said media file" (Claims 10 and 19).

*Id.* (quoting '033 Patent at col. 36-37).

The court found that a term from the written description—the "copyright compliance mechanism 300"—generally discloses the structure of a "compliance mechanism," and that "copyright compliance mechanism 300" includes "one or more coder/decoders, one or more agent programs, and one or more skins, but not instructions, a user ID generator, system hooks, a wave shim, or a custom media device driver." *Id.* at *14. The district court found that this description did not constitute a sufficiently definite structure. *Id.* at *18. Specifically, it determined that, although the structure included various components, only one—the skins—provided some idea as to how the compliance mechanism achieves its functions. The district court focused on the fact that, while the specification identified various components of a *possible* structure, Media Rights disclaimed that all those components, or even any specific subsection of them, are necessary to perform the recited functions. Because the structure for computer-implemented functions must be an algorithm, and the specification here failed to describe "an algorithm whose terms are defined and understandable," the district court determined that the "compliance mechanism" term is indefinite. *Id.* at *17–18 (quoting *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1381 (Fed. Cir. 2013)).

The district court also concluded that the term "custom media device" is indefinite. *Id.* at *25. Looking at the specification, the court noted that it was unclear whether "custom media device" was hardware or software. For example, in one embodiment, the specification

stated that the device can emulate a custom media device driver, which is considered hardware, while, in another embodiment, the "custom media device" is equated to a custom media device application, i.e. software. *Id.* at \*20–21.  Further complicating matters was the lack of clarity as to what "custom" means. *Id.* at \*21.  At the *Markman* hearing, Media Rights attempted to define "custom" as being specific to the particular media content, and cited to the specification's discussion of "custom media player" for support.  The district court found this argument unconvincing, however, explaining that "custom media device" cannot be equated with "custom media player" because the player is not required for every embodiment of the invention, while the "custom media device" is. *Id.* at \*24–25.  Additionally, the district court found that it would be improper to equate the two because "custom media player" is defined only as an application in the specification, whereas "custom media device," according to Media Rights, also encompasses a driver. *Id.* at \*25.  Because "the bounds of the term 'custom media device'" are unclear, the district court concluded that the term "custom media device" is indefinite. *Id.*

Because these two indefinite terms, "compliance mechanism" and "custom media device" are included in every claim, the court concluded that the entire patent is invalid.  Given this conclusion, the district court declined to reach Capital One's § 101 argument. *Id.* at \*25–28.  The district court then entered final judgment in favor of Capital One.

Media Rights timely appealed to this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

On appeal, Media Rights argues that the district court erred when it determined that both "compliance mechanism" and "custom media device" are invalid for indefiniteness.  A patent must "conclude with one or more

claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112, ¶ 2 (2006).[1] A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). Notably, a claim is indefinite if its language "might mean several different things and no informed and confident choice is available among the contending definitions." *Id.* at 2130 n.8 (quotation omitted). We review the district court's indefiniteness determination de novo. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed Cir. 2014). Because the indefiniteness issue in this case is intertwined with claim construction, we review any factual determinations for clear error. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999) ("[A] court's determination of the structure that corresponds to a particular means-plus function limitation is indeed a matter of claim construction."); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836 (2015).

## A. "Compliance Mechanism"

The parties first dispute whether "compliance mechanism" is a means-plus-function term. Means-plus-function claim limitations, authorized by 35 U.S.C. § 112,

---

[1]    Paragraph 2 and Paragraph 6 of 35 U.S.C. § 112 were replaced by § 112(b) and § 112(f) respectively when the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011) took effect on September 16, 2012. Because the application resulting in the asserted patent was filed before that date, we refer to the pre-AIA version of § 112.

¶ 6, allow a patentee to draft claim terms "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112, ¶ 6. But this flexibility in claim drafting comes at a price. Such claims are construed to cover only "the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, _ F.3d _, No. 2013-1130, 2015 U.S. App. LEXIS 10082, at *15 (Fed. Cir. June 16, 2015).

"It is well settled that [a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, [¶] 6 applies." *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (quotation omitted). And, it is equally understood that "a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, [¶] 6 does not apply." *Id.* at 1371 (quotation omitted). But this presumption against the application of § 112, ¶ 6 to a claim term lacking the word "means" can be overcome if a party can "demonstrate[] that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 2015 U.S. App. LEXIS 10082, at *19 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). "In undertaking this analysis, we ask if the claim language, read in light of the specification, recites sufficiently definite structure to avoid § 112, ¶ 6." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014) (citing *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1357 (Fed. Cir. 2011)).

In this case, there is no dispute that the term "compliance mechanism" does not include the word "means." The parties also agree that the claim language recites functions for the "compliance mechanism" term. But, the parties dispute whether the claims, read in light of the specification, only "recite function without reciting suffi-

cient structure for performing that function." *Williamson*, 2015 U.S. App. LEXIS 10082, at *19.[2]

Media Rights does not dispute that "compliance mechanism" has no commonly understood meaning and is not generally viewed by one skilled in the art to connote a particular structure. To prevent the application of § 112, ¶ 6, Media Rights analogizes the "compliance mechanism" term to the "modernizing device" term described in *Inventio*, which we held was not a means-plus-function term based on extensive structural description in the specification. 649 F.3d at 1357–59. In *Inventio*, we found that the term "modernizing device"—not a commonly understood term—was used to describe an electrical circuit, which we found connotes sufficient structure when coupled with a detailed description of the circuit's operation. *Id.* at 1358 (citing *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1355–56 (Fed. Cir. 2006)). Because "the claims indicate[d] that 'modernizing device' functions as an electrical circuit that receives signals, processes signals, and outputs signals to other components" and the specification "depict[ed] the modernizing device and its internal components," "show[ed] how the elements were connected together," and further described how these components

---

[2]  Media Rights also argues that the district court erred in its analysis because it failed to consider the claim language in light of the specification when determining that "compliance mechanism" was a means-plus-function term. Media Rights is correct that the district court should have considered the entire intrinsic record when assessing whether "compliance mechanism" invokes § 112, ¶ 6. But, as discussed below, because the specification does not recite any identifiable structure for the "compliance mechanism" term, the district court's failure to consider the intrinsic record at that initial stage was harmless.

perform the claimed functions, we concluded that "modernizing device" was not a means-plus-function limitation. *Id.* at 1358–59.

Here, unlike *Inventio*, the claims do not use the term "compliance mechanism" as a substitute for an electrical circuit, or anything else that might connote a definite structure. Rather, the claims simply state that the "compliance mechanism" can perform various functions. A review of the intrinsic record does not change this conclusion. The written description only depicts and describes how what is referred to as the "copyright compliance mechanism" is connected to various parts of the system, how the "copyright compliance mechanism" functions, and the potential—though not mandatory—functional components of the "copyright compliance mechanism." *See* '033 Patent col. 18:57–col. 19:5; col. 20:32–49; Fig. 3; Fig. 5B. None of these passages, however, define "compliance mechanism" in specific structural terms. And, the addition of the term "copyright compliance mechanism" in the specification only confuses the issue further. Media Rights does not contend that "copyright compliance mechanism" is the equivalent of the electrical circuit detailed in the written description at issue in *Inventio*. Indeed, Media Rights asserts that the "copyright compliance mechanism"—the only "compliance mechanism" referenced outside the claims and the summary of the invention, and the only one depicted in the figures to which it points—is narrower than the structure it claims as the "compliance mechanism." Without more, we cannot find that the claims, when read in light of the specification, provide sufficient structure for the "compliance mechanism" term.

Media Rights attempts to avoid this conclusion by arguing that the specification recits sufficient structure under *Inventio* because it describes how the "compliance mechanism" is connected to and interacts with the other components of the system, what processes the "compliance

mechanism" performs, and what structural subcomponents might comprise the "compliance mechanism." We disagree. Media Rights is correct that the Court in *Inventio* considered how the "modernizing device" was connected to other claimed components of the system. *Id.* at 1358. But this description alone was not sufficient to avoid the application of § 112, ¶ 6. Rather, it was the specification's disclosure regarding how the "modernizing device" and its internal components *operated* as a circuit, which we had recognized in prior cases to connote sufficient structure, that was the basis for this Court's conclusion that "modernizing device" was not a means-plus-function term. *Id.* at 1358–59. In *Inventio*, moreover, the Court was applying our now-superseded case law, which imposed a heavy presumption against finding a claim term to be in means-plus-function format. *Id.* at 1356 (noting that "the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome"). Because we apply no such heavy presumption here, and the description of the structure to which Media Rights points is far less detailed than in *Inventio*, we do not believe *Inventio* carries the weight Media Rights attaches to it.

We have never found that the term "mechanism"—without more—connotes an identifiable structure; certainly, merely adding the modifier "compliance" to that term would not do so either. *See Mass. Inst. of Tech*, 462 F.3d at 1354 (explaining that "[t]he term 'mechanism' standing alone connotes no more structure than the terms 'means,'" and thus, the Court should consider whether the adjectival modifier carries a generally understood structural meaning in the art). Nothing in the written description of the '033 Patent adds sufficiently to the meaning of the term's structure; it only describes the term's function and interaction with other parts in the system. *See* '033 Patent col. 3:41–43 (noting that Fig. 3 depicts a diagram of various *functional* components of a copyright compli-

ance mechanism); col. 8:32–63 (describing the functions of the copyright compliance mechanism's components); col. 13:20–55 (detailing the use of custom media device drivers in a copyright compliance mechanism that receives a media file); col. 21:14–46 (explaining that Fig. 5B illustrates the computer system used to implement the invention, wherein the copyright compliance mechanism is coupled to playback application and the wave shim driver). This disclosure fails to provide sufficient structure for "compliance mechanism." *See Robert Bosch*, 769 F.3d at 1099–1100 (finding that the specification's description of how the "program recognition device" connects and functions with various components was insufficient to provide structure to the "program recognition device" term). Accordingly, we find that the district court was correct to conclude "compliance mechanism" is a means-plus-function limitation.

Because "compliance mechanism" is a means-plus-function term, we now must "attempt to construe the disputed claim term by identifying the 'corresponding structure, material, or acts described in the specification' to which the claim term will be limited." *Id.* at 1097 (quoting *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1097 (Fed. Cir. 2008)). Where there are multiple claimed functions, as there are in this case, the patentee must disclose adequate corresponding structure to perform *all* of the claimed functions. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318–19 (Fed. Cir. 2012) ("[W]here a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, we treat the specification as if no algorithm has been disclosed at all. In such instances, we are not faced with a disclosure which addresses itself to an identifiable function, but arguably does so inadequately."). "If we are unable to identify any 'corresponding structure, material, or acts described in the specification,' the claim term is indefinite." *Robert Bosch*, 769 F.3d at 1097 (quoting *Noah*

*Sys.*, 675 F.3d at 1312); *see also EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015) ("Means-plus-function claim limitations under § 112 ¶ 6 must satisfy the definiteness requirement of § 112 ¶ 2.").

Here, the parties agree that the "compliance mechanism" performs four functions: controlling data output by diverting a data pathway; monitoring the controlled data pathway; managing an output path by diverting a data pathway; and stopping the play of media content. *See Media Rights*, 2013 U.S. Dist. LEXIS 176475, at *11. The question is whether the specification discloses adequate structure to achieve all four of the claimed functions. *See Noah Sys.*, 675 F.3d at 1311 ("Even if the specification discloses a 'corresponding structure,' the disclosure must be adequate; the patent's specification must provide 'an adequate disclosure showing what is meant by that [claim] language.'" (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994))). Because these functions are computer-implemented functions, moreover, the structure disclosed in the specification must be more than a general purpose computer or microprocessor. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (citing *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999)). Instead, we require that the specification disclose an algorithm for performing the claimed function. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008). The algorithm may be expressed as a mathematical formula, in prose, as a flow chart, or in any other manner that provides sufficient structure. *Noah*, 675 F.3d at 1312 (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)).

Here, the specification fails to disclose an operative algorithm for both the "controlling data output" and "managing output path" functions. These two functions both require diverting a data pathway. Media Rights

argues that the specification discloses an algorithm for performing this diversion at col. 11:37–12:20, with its recitation of C++ source code that can be implemented to perform the function. To determine if this disclosure of software code is sufficient, the Court in this case "needs expert witness testimony to determine what that source code discloses at an algorithmic level," as Media Rights conceded at oral argument. Oral Arg. at 14:40–47, *available at* http://oralarguments.cafc.uscourts.gov/default .aspx?fl=2014-1218.mp3. Here, there is unrebutted expert testimony that this code only returns various error messages. The cited algorithm does not, accordingly, explain how to perform the diverting function, making the disclosure inadequate. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("[T]he patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function."). Because it fails to disclose any other algorithm that performs the diversion function, the specification of the '033 Patent fails to disclose sufficient structure for the "compliance mechanism" term.

Additionally, the specification does not disclose sufficient structure for the "monitoring" function. Media Rights alleges that the specification discloses a set of rules at col. 18:33–48, which the "copyright compliance mechanism" applies to monitor the data pathway to ensure there is no unauthorized recording of electronic media. But, this cited portion of the specification provides no detail about the rules themselves or how the "copyright compliance mechanism" determines whether the rules are being enforced. '033 Patent col. 18:38–41 (explaining that the copyright compliance mechanism will review a portion of a media file in order to verify that the rules are enforced); col. 18:42–44 (explaining that this process will continue "until the media file's contents have been presented in their entirety"). In the absence of any further

disclosure, we also find that the specification fails to disclose sufficient structure for the "monitoring" function. Accordingly, the district court did not err when it determined that this term is indefinite.[3]

## CONCLUSION

Here, the district court properly determined that "compliance mechanism" is a means-plus-function term, and that the specification fails to adequately disclose the structure to perform all four of its functions. We agree with the district court that this fact renders all claims in the '033 Patent indefinite. Accordingly, we affirm the district court's grant of judgment of invalidity as to claims 1–27 of '033 Patent.

**AFFIRMED**

---

[3]    Because we affirm the district court's decision that the "compliance mechanism" limitation is indefinite, we need not reach Media Rights's additional argument that the "custom media device" term is not indefinite. *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1350 (Fed. Cir. 2013) ("An appellate court can affirm a decision of the trial court upon any ground supported by the record.") (citing *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 822 n.1 (Fed. Cir. 1989)). Additionally, we need not reach Capital One's alternative argument that the district court's invalidity decision also can be affirmed on 35 U.S.C. § 101 grounds. As Capital One itself acknowledges, "the district court did not address [its] motion for judgment on the pleadings under § 101." Appellees' Br. at 2. We decline to do so in the first instance.